UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

09-20804-CIV-HOEVELER

BARRET ROBBINS,

    Plaintiff,

v.

THE CITY OF MIAMI BEACH,
OFFICER COLIN PFROGNER,
OFFICER MICHAEL MULEY, and
OFFICER WILLIAM SCHOENFELD,

    Defendants.

_____/

## ORDER AND REASONS
## ON MOTIONS TO DISMISS

BEFORE the Court are two motions to dismiss the plaintiff's second amended complaint. The first is filed by the City of Miami Beach ("CMB") and the second by three individual Miami Beach police officers. The motions have been fully brief and are ready for a decision. For the reasons that follow, CMB's motion is GRANTED in part and DENIED in part, and the police officers' motion is GRANTED in part and DENIED in part.

## Background

The following information comes from the second amended complaint. On January 15, 2005, Barret Robbins, a former professional football player with some history of mental health issues, entered a private upstairs area of the Playwright Pub in Miami Beach to find a bathroom. The bar manager called 911 and

1

Miami Beach police officers Michael Muley, Mark Schoenfeld, and Colin Pfrogner responded. Officers Muley and Schoenfeld entered the upstairs bathroom and allegedly burst into the stall where plaintiff was sitting, "pointing their guns in [his] face and shouting at him." According to Robbins, he "believed he was being robbed or attacked and, in a panic, jumped up and tried to run away from his perceived assailants." He ran into the hallway, where Officer Pfrogner was positioned. Officer Muley chased Robbins and shot him several times while the Pfrogner and Schoenfeld stood by.[1] Robbins was critically wounded but survived. According to the complaint, the police officers conspired to cover up their wrongdoing by concocting a story about shooting Robbins in self defense.

Mr. Robbins asserts six counts in the second amended complaint.[2] Counts I, II, and III are § 1983 claims against Officers Pfrogner, Muley, and Schoenfeld, respectively, for using unreasonable force, attacking him without probable cause, violating his right to equal protection of the law, and illegally conspiring to cover up their wrongdoing. Count IV asserts a § 1983 claim

---

[1] According the complaint, the police knew or should have known Robbins was in a delusional state. Robbins alleges that, earlier that day, he was picked up for vagrancy on Sunset Island by different police officers (who are not party of this lawsuit), driven to South Beach, and released in a disorientated state.

[2] The counts are inexplicably misnumbered as Counts I, II, III, II, III, and III, in that order. The second "Count II" ("CMB – 42 U.S.C. § 1983") should be Count IV; the second "Count III" ("CMB – State Law Claims") should be Count V; and the third "Count III" ("Officers – State Law Claims") should be Count VI.

2

against CMB for maintaining a custom or policy of tolerating, encouraging, and failing to train police about the use of excessive force. Count V is a Section 768.28 claim under Florida's waiver of sovereign immunity law against CMB, alleging the City is liable for the actions of its officers. And Count VI is a Section 768.28 claim against all three police officers, for assault and battery, and for conspiring to cover up their misconduct.

## I. Standard

A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a pleading "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

In assessing § 1983 civil rights claims against individuals (as opposed to municipalities) who are entitled to assert qualified

immunity, district courts in the Eleventh Circuit apply a "heightened pleading standard." <u>Amnesty Int'l v. Battle</u>, 559 F.3d 1170, 1179 (11th Cir. 2009). Under this standard, the complaint must meet the Rule 8(a)(2) requirement and, in addition, "some factual detail is necessary, especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." <u>Id</u>.

## II. <u>Claims against the police officers</u>

### A.   Standard

For police to be eligible for qualified immunity, they must have been acting within the scope of their discretionary authority when the wrongful act occurred. <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1156 (11th Cir. 2005). No one disputes the police officers were acting in their discretionary authority. Therefore, the burden shifts to plaintiff to show that qualified immunity is not appropriate. <u>Mercado</u>, 407 F.3d at 1156. The Court conducts a two-part inquiry to determine whether qualified immunity is appropriate. <u>Harris v. Coweta County</u>, 406 F.3d 1307, 1313-14 (11th Cir. 2005). First, the Court determines whether the facts viewed in the light most favorable to plaintiff show that the police violated a constitutional right. <u>Brosseau v. Haugen</u>, 543 U.S. 194, 197 (2004). Second, the court determines whether, at the time of the violation, the constitutional right was clearly established in light of the specific context of the case, not simply as a broad

4

proposition. <u>Brosseau</u>, 543 U.S. at 198-99.

**B.   Section 1983 claims**

"Any claim that a law enforcement officer used excessive force--whether deadly or not--during a seizure of a free citizen must be analyzed under the Fourth Amendment's 'reasonableness.'" <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1166 (11th Cir. 2009) (<u>citing</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)). Because minimal force is a violation of the Fourth Amendment if the police did not have probable cause to arrest or detain the suspect, <u>Zivojinovich v. Barner</u>, 525 F.3d 1059, 1071 (11th Cir. 2008), the first inquiry is whether probable cause existed. In pleadings and submissions to the Court, the plaintiff admits he was in an unauthorized location in the pub and rightfully suspected of trespass. The Court is satisfied the police had arguable probable cause to investigate the situation and detain the plaintiff.

The real question, however, is whether the amount of force was "objectively reasonable" in light of the facts confronting the officer. <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346-47 (11th Cir. 2002). In answering this, the Court must carefully consider, (1) the severity of the crime at issue, (2) whether Robbins posed an immediate threat to the safety of the officers or others, (3) whether he was actively resisting or evading arrest, (4) the need for the application of force, (5) the relationship between the need and the amount of force used, (6) the extent of the injury inflicted and, (7) whether the force was applied in good faith or

maliciously and sadistically. See Hadley, 526 F.3d at 1329.

Taking plaintiff's allegations as true, as the Court must, Robbins's only crime (wandering into an upstairs bathroom in a South Beach bar) was a minor one, if a crime at all. The Court has no information he posed a threat to anyone and although he admittedly attempted to flee, this is only one of the relevant factors and must be considered in the full context of the factual allegations. The Eleventh Circuit recently collected cases in which it either dismissed or allowed excessive force claims against police officers in Sanchez v. Hialeah Police Dep't, No. 09-11821, 2009 WL 4829872 *2 (11th Cir. Dec. 16, 2009). Comparing the various cases cited in Sanchez to the fact-setting of the present case, the Court is satisfied this case more closely resembles those in which the excessive force allegations were sufficient to overcome qualified immunity. Thus, for now the plaintiff's claim of excessive force against Officer Muley is permitted to continue.

Robbins contends that the other two officers are liable under § 1983 for failing to intervene when Officer Muley used excessive force. In Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007), the court of appeals wrote "[t]he law of this circuit is that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." (quotations omitted). Of course, to be liable the defendant officer

6

must have had a legitimate opportunity to intervene. <u>Ensley v.
Soper</u>, 142 F.3d 1402, 1407 (11th Cir. 1998); <u>Carr v. Tatangelo</u>, 338
F.3d 1259, 1274, n. 27 (11th Cir. 2003). According to Robbins, all
three officers knew he "was unarmed, had given no indication of any
kind that he was violent. . . and was panicked and trying to escape
what he thought was an attack on his person"; all three were in the
vicinity of the shooting (the upstairs hallway); and there were
multiple shots fired (the Court has no information about how much
time elapsed between shots). Based on these allegations, the Court
is satisfied the factual allegations in the second amended
complaint state a claim against Officers Pfrogner and Schoenfeld
for failure to prevent the use of excessive force. The defendants
will have an opportunity to present their side of the story on
motions for summary judgment.

Finally, the police officers submit the plaintiff has not
stated a claim under § 1983 for violations of the Fifth and
Fourteenth Amendments. Indeed, the plaintiff rather summarily
asserts that the police officers deprived him "of rights secured to
him by the. . . Fourth (by subjecting him to unreasonable search
and seizure), Fifth (by attacking him and taking him into custody
without probable cause), and Fourteenth Amendments (by denying him
equal protection of the laws)." In response, Robbins draws
attention to <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1332 (11th Cir.
2008), an excessive force case in which the plaintiff alleged Miami
Beach police entered into a "conspiracy to cover up [the use of

excessive force, in violation of] the Eighth and Fourteenth Amendments." Although the Eleventh Circuit appeared to accept that in some circumstances a police conspiracy to cover up excessive force could violate the Fifth or Fourteenth Amendments in cases where the conspiracy was alleged to "hinder a criminal defendant's access to the courts" or "prevent exculpatory or impeaching evidence from reaching the desk of the state prosecutor," the plaintiff in Hadley had not made those allegations. Id. His mere reference to the Fourteenth Amendment in the complaint was not enough.[3] Like the plaintiff in Hadley, Robbins has not explained any actionable basis for his claims under the Fifth or Fourteenth Amendments. The alleged Fifth Amendment violation (i.e., that the police "attack[ed] him and [took] him into custody without probable cause") is, in reality, a Fourth Amendment violation; and the asserted Fourteenth Amendment violation ("denying [Robbins] equal protection of the laws") is not supported by any factual allegations in the pleadings. These claims, therefore, are dismissed, with prejudice.

**C. State law claims**

    Section 768.28 of the Florida Statues allows plaintiffs to sue

---

    [3]Although Hadley was an interlocutory appeal from the district court's denial of the police officers' motion for summary judgment, the Eleventh Circuit's comments are instructive in the motion to dismiss context, as well. See id. at 1332 ("It is not our job to divine a constitutional violation to support Hadley's conspiracy claim. We are left completely in the dark about the constitutional basis for the claim. His complaint contains no explanation of which rights protected by the Fourteenth Amendment were infringed.")

state agents for acts or omissions done in the scope of their employment if done "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). In Count VI of the second amended complaint, Robbins asserts the police officers committed an assault and battery which was "undertaken in bad faith and with a malicious purpose." So far as it appears, Robbins has met the pleading requirements of Fla. Stat. § 768.28(9)(a).

Nevertheless, this count was previously dismissed because the state-law claims against all three police officers were asserted in a single count, even though their roles in the arrest and shooting were quite different. The plaintiff admits he ignored the Court's instructions to present the claims in separate counts. Accordingly, Count VI is dismissed, without prejudice.

### III. Claims against the City of Miami Beach

#### A. Section 1983 claims

The Court previously declined to dismiss Robbins's § 1983 claims against CMB that were premised on the City's policy or custom of encouraging, tolerating, and failing to train the police about the use of excessive force. Generally, a municipality can only be liable under § 1983 if its policies and customs were the "moving force [behind] the constitutional violation." See City of Canton, Ohio v. Harris, 109 U.S. 378, 385 (1989). In other words, the very "execution of the municipality's policy or custom. . . [must] inflict the [constitutional] injury." Canton,

109 U.S. 378 at 385 (quoting Springfield v. Kibbe, 480 U.S. 257, 267 (1987)). In cases where a municipality's "failure to train" its police force is the basis for § 1983 liability, the question is whether the deliberate choice by municipal officials not to provide further training is so egregious that it rises to the level of "city policy" itself. Id. at 390.

The Court's conclusion on this point has not changed. Robbins alleges that CMB's failure to investigate excessive force complaints is a "custom or policy" that was the "moving force [behind] the constitutional violation" at issue. See Canton, 109 U.S. at 385. In the pleadings, Robbins submits that the City has refused to properly investigate excessive force complaints and failed to discipline or prosecute police officers for using excessive force. The plaintiff claims that when incidents of excessive force are investigated, the investigation reports omit unfavorable evidence, exclude statements of non-police witnesses, and rely solely on the word of the police officers involved. The Court is satisfied that these factual allegations are sufficient to support a theory of municipal liability for constitutional violations pertaining to excessive force.

However, Robbins has not alleged facts to support a § 1983 claim based on the Fifth Amendment. He summarily asserts that the City's policies deprived him of rights secured to him by the "Fourth [Amendment] (by subjecting him to unreasonable search and seizure) and Fifth [Amendment] (by attacking him and taking him

10

into custody without probably cause)." As the Court discussed above, the excessive force complaint pertains to the Fourth Amendment, not the Fifth Amendment. Thus, the § 1983 claims against the City of Miami Beach premised on a Fifth Amendment violation are dismissed, with prejudice.

**B. State law claims**

Section 768.28 of the Florida Statutes waives sovereign immunity for state agencies, with the exception that agencies will not be liable for acts or omissions committed by state employees "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a); see also Dist. Sch. Bd. of Lake County v. Talmadge, 381 So.2d 698, 699-703 (Fla. 1980). The City argues that Robbins should not be allowed to "shot gun" the assault claim and the battery claim together in the same count, since they are distinct torts subject to different statutory defenses, in some circumstances. Robbins has not responded to this argument. For the sake of clarity, and because Robbins must amend the § 768.28 count against the police officers anyway, he is instructed to separate the state law claims against CMB into two separate counts. Accordingly, it is hereby:

**ORDERED AND ADJUDGED:**

1.    The police officers' motion to dismiss the § 1983 claims pertaining to excessive force is DENIED.

2.    The police officers' motion to dismiss the § 1983 claims

11

pertaining to Fifth and Fourteenth Amendment violations is GRANTED. These claims are dismissed, with prejudice.

3.    The police officers' motion to dismiss the state law claims in Count VI is GRANTED. If the plaintiff wishes, he may file an amended complaint within 20 days and present the state-law claims against the police officers in separate counts.

4.    The City of Miami Beach's motion to dismiss the § 1983 claims pertaining to City policies concerning the use of excessive force is DENIED; however, the § 1983 claim against the City of Miami Beach pertaining to alleged Fifth Amendment violations is dismissed, with prejudice. Finally, the plaintiff is instructed to separate the state law claims against the City of Miami Beach into separate counts.

7.    The plaintiff's amended complaint is due within 20 days of the date of this order.

DONE AND ORDERED in Miami, Florida, April 5TH 2010.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE